Jesse **GRICE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. O–74–708.

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1974.

Antony C. Link, Duncan, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James D. Bedner, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

On the 26th day of December, 1973, in case number CRF–73–145 in the District Court of Stephens County, the appellant, Jesse Grice, hereinafter referred to as defendant, pled guilty to the crime of Obtaining Merchandise By Bogus Check and received a three (3) year suspended sentence, two of the conditions of said suspension being that the defendant was not to violate any city, state, or federal law and that said defendant was to conduct himself in all respects as a good and peaceable law abiding citizen. On July 11, 1974, the trial court heard the State's application to revoke said suspended sentence upon the ground that defendant did not conduct himself as a good law abiding citizen in that on the 21st day of April, 1974 and the 22nd day of April, 1974, the defendant unlawfully and wrongfully obtained merchandise from a grocery store in Duncan, Oklahoma. After a hearing upon said application, the trial court revoked said suspended sentence and the defendant has filed his timely appeal.

The evidence adduced at the hearing reflects that on the 21st day of April, 1974, the defendant wrote a $15.00 check on the State National Bank of Marlow to Goodner's Grocery in Duncan and purchased $1.23 in groceries. On the next day he returned and purchased $8.73 worth of groceries and paid for same with another check in the amount of $10.73. Both checks were subsequently returned "no account" by the bank. The store manager testified that after the checks came back the defendant told him to run them through again. After the checks came back a second time, the defendant told the manager that he would pick them up in a few days. The checks were never picked up or paid. The vice-president of the bank then testified that at the time both checks were drawn the defendant had no account with the bank, although he had had one earlier. The witness did not know whether notice of the closed account had been sent to defendant. The State then rested.

For the defense the assistant manager of the grocery store testified that after the checks had been written defendant approached him and presumably wanted to pick them up. However, the checks had not been returned and the defendant was advised that he would be notified if they came back.

The defendant testified that on both occasions he had advised the checker that the checks were not good, that he needed groceries, and that he would be back to pick them up. He returned later, advised the assistant manager that he would like to pick them up and was told to wait until the checks came back and that he would be notified. He subsequently talked to the manager and told him that he would pick up the checks and was again advised that he would be notified. No notice was received and he was arrested on the 14th of May. On cross-examination the defendant admitted that at the time he wrote the checks he had no account at the bank and that the checks had never been paid.

The manager was then recalled as a defense·witness and stated that it was not the policy of the store to take worthless checks in exchange for merchandise and a promise to pay.

After the defense rested and the State advised it had no rebuttal witnesses, the trial court on its own motion ordered that the checker who took one of the checks and still resided in the county be subpoenaed to testify. Upon his arrival the checker testified that he did not recall the specific transaction, but that he never knowingly took a bad check while he was an employee of the store. In response to

the question by the trial judge the witness stated as follows:

"BY THE COURT: Let me ask you, Mr. Barrick, is it your testimony as far as Exhibit Number 2, this check, that the person who submitted that check to you didn't tell you that they had insufficient funds in the bank?

"A: If anybody would have told me that, I would have called the manager or the assistant manager.

"BY THE COURT: The person who gave you that check didn't tell you that?

"A: No."

The defendant's first proposition in error urges that the State did not introduce into evidence the suspended sentence which was the subject of the revocation hearing and that, therefore, there was insufficient evidence to sustain the order revoking suspended sentence. With this contention we cannot agree. The trial court is charged with judicial notice of the contents of the record before it. Harrison v. State, Okl.Cr., 506 P.2d 1394. The suspended sentence was an integral portion of the record before the trial court and the suspended sentence of December 26, 1973, was specifically referred to in the application to revoke. The defendant was in no way prejudiced by the failure of the State to introduce a certified copy of the suspended sentence into evidence.

The defendant's next proposition in error essentially urges that the State failed to present sufficient evidence in support of its application since the evidence as a whole reflected that the defendant had tendered payment of the checks to the payee within five days of presentment for payment. Again, we cannot agree. As set out in Snider v. State, Okl.Cr., 338 P.2d 892, the gist of the crime of passing bogus checks is in obtaining a valuable thing with fraudulent intent by use of said bogus check. Intent to defraud is an issue to be determined by the trier of fact. Wooldridge v. State, Okl.Cr., 502 P.2d 348. In the instant case the trial court as the trier of fact made a determination that the "no account" checks were passed with intent to defraud. Since the State need only show by a preponderance of the evidence that the conditions of the suspended sentence have been violated, we cannot say that the trial court in any way abused its discretion. It should be pointed out that a close examination of the transcript of the hearing reflects that the assistant manager only presumed that the defendant intended to pick up the check because "He wouldn't never come in there to check on them if he wasn't going to pick them up." Defendant's second proposition is without merit.

The defendant next urges that the trial judge acted as prosecutor when he subpoenaed on his own motion and questioned Billie Barrick, a checker who took one of the checks. Again, we do not agree. The purpose of the hearing was to determine if the suspended sentence imposed by the trial judge should be revoked. The trial court certainly has the right, in the exercise of sound judicial discretion, to elicit the truth. Richmond v. State, Okl. Cr., 456 P.2d 897.

It is therefore the opinion of this Court that the trial court's Order Revoking Suspended Sentence should be, and the same is hereby affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in results.